UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

L.T. TUCKER,

        Plaintiff,                    Case No. 1:15-cv-100

v.                                             Honorable Janet T. Neff

SCOTT MINNICH,

        Defendant.
_____/

**OPINION DENYING LEAVE
TO PROCEED *IN FORMA PAUPERIS* - THREE STRIKES**

        Plaintiff L.T. Tucker, a prisoner incarcerated at Alger Correctional Facility, filed a complaint pursuant to 42 U.S.C. § 1983. Plaintiff seeks leave to proceed *in forma pauperis*. Because Plaintiff has filed at least three lawsuits that were dismissed as frivolous, malicious or for failure to state a claim, he is barred from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g). The Court will order Plaintiff to pay the $400.00 civil action filing fee applicable to those not permitted to proceed *in forma pauperis* within twenty-eight (28) days of this opinion and accompanying order. If Plaintiff fails to do so, the Court will order that his action be dismissed without prejudice. Even if the case is dismissed, Plaintiff will be responsible for payment of the $400.00 filing fee in accordance with *In re Alea*, 286 F.3d 378, 380-81 (6th Cir. 2002).

**Discussion**

        The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which was enacted on April 26, 1996, amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*. As the Sixth Circuit has stated, the PLRA

was "aimed at the skyrocketing numbers of claims filed by prisoners – many of which are meritless – and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). For that reason, Congress put into place economic incentives to prompt a prisoner to "stop and think" before filing a complaint. *Id.* For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b). The constitutionality of the fee requirements of the PLRA has been upheld by the Sixth Circuit. *Id.* at 1288.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits. Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the section governing proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The statutory restriction "[i]n no event," found in § 1915(g), is express and unequivocal. The statute does allow an exception for a prisoner who is "under imminent danger of serious physical injury." The Sixth Circuit has upheld the constitutionality of the "three-strikes" rule against arguments that it violates equal protection, the right of access to the courts, and due process, and that it constitutes a bill of attainder and is *ex post facto* legislation. *Wilson v. Yaklich*, 148 F.3d 596, 604-06 (6th Cir. 1998); *accord Pointer v. Wilkinson*, 502 F.3d 369, 377 (6th Cir. 2007) (citing

*Wilson*, 148 F.3d at 604-06); *Rodriguez v. Cook*, 169 F.3d 1176, 1178-82 (9th Cir. 1999); *Rivera v. Allin*, 144 F.3d 719, 723-26 (11th Cir. 1998); *Carson v. Johnson*, 112 F.3d 818, 821-22 (5th Cir. 1997).

Plaintiff has been an active litigant in the federal courts in Michigan. In more than three of Plaintiff's lawsuits, the Court entered dismissals on the grounds that they were frivolous or failed to state a claim. *See Tucker v. Chapin et al.*, No. 4:94-cv-100 (W.D. Mich. June 30, 1994); *Tucker v. Kinney et al.*, No. 4:94-cv-101 (W.D. Mich. June 30, 1994); *Tucker v. Hembree et al.*, No. 4:94-cv-105 (W.D. Mich. Jul. 15, 1994); *Percival et al. v. Williams et al.*, No. 1:00-cv-849 (W.D. Mich. Nov. 29, 2000). Although three of the dismissals were entered before enactment of the PLRA on April 26, 1996, the dismissals nevertheless count as strikes. *See Wilson*, 148 F.3d at 604. Moreover, Plaintiff's allegations do not fall within the exception to the three-strikes rule for a prisoner under imminent danger of serious physical harm.

The Sixth Circuit set forth the following general requirements for a claim of imminent danger:

> In order to allege sufficiently imminent danger, we have held that "the threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (internal quotation marks omitted). "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id*. at 797–98; *see also* [*Taylor v. First Med. Mgmt.*, 508 F. App'x 488, 492 (6th Cir. 2012)] ("Allegations of past dangers are insufficient to invoke the exception."); *Percival v. Gerth*, 443 F. App'x 944, 946 (6th Cir. 2011) ("Assertions of past danger will not satisfy the 'imminent danger' exception."); *cf*. [*Pointer v. Wilkinson*, 502 F.3d 369, 371 n.1 (6th Cir. 2007)] (implying that past danger is insufficient for the imminent-danger exception).
>
> In addition to a temporal requirement, we have explained that the allegations must be sufficient to allow a court to draw reasonable inferences that the danger exists. To that end, "district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are conclusory or ridiculous, or are clearly baseless (i.e. are fantastic or delusional and rise to the level

> of irrational or wholly incredible)." *Rittner*, 290 F. App'x at 798 (internal quotation marks and citations omitted); *see also Taylor*, 508 F. App'x at 492 ("Allegations that are conclusory, ridiculous, or clearly baseless are also insufficient for purposes of the imminent-danger exception.").

*Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580, 585 (6th Cir. 2013). A prisoner's claim of imminent danger is subject to the same notice pleading requirement as applied to prisoner complaints. *Id*. Consequently, a prisoner must allege facts in the complaint from which court could reasonably conclude that the prisoner was under an existing danger at the time he filed his complaint, but the prisoner need not affirmatively prove those allegations. *Id.*

Plaintiff alleges that he lost a filling in one of his teeth in 2014, while he was housed at Bellamy Creek Correctional Facility (IBC). On February 24, 2014, he requested emergency dental treatment because he was experiencing "pain, bleeding, swelling of the gums" and an infected tooth. (Compl. 3, docket #1.) On March 19, he received an x-ray of his tooth and met with Dr. Scott Minnich, the defendant in this action. Dr. Minnich conducted a one-second visual examination of Plaintiff's tooth. Plaintiff explained that he was in pain, his gums were swollen and bleeding, and that he believed he had an infection in his tooth and gums because there was some "meat" stuck inside the tooth. (*Id.*) Plaintiff stated that he could not remove the "meat" and that it had been there for "weeks." (*Id.*) Plaintiff asked Defendant to remove the "meat" because it was causing pain. Defendant stated, "Oh, I can see that it is bleeding, infected, and swelling . . . it ain't no emergency." (*Id.*) Defendant did not tell Plaintiff that the tooth was "fractured." (*Id.* at 4.) Plaintiff insisted that an officer had sent Plaintiff for an "emergency extraction" due to his infected tooth, and that it was obvious that there was a problem. (*Id.*) Plaintiff stated that he would file a grievance for lack of dental treatment. At this point, Defendant Minnich became "threatening" and "argumentative" and

told Plaintiff to "use a 'toothpick' to get [the meat] out." (*Id.*) Defendant then told Plaintiff to leave his office and threatened to charge Plaintiff with a misconduct.

In March and May of 2014, Plaintiff sought further care from Dr. Minnich, to no avail. On June 3, 2014, Plaintiff was transferred to Saginaw Correctional Facility (SRF). Plaintiff subsequently requested further care for his tooth, and on June 23, 2014, he was able to meet with a dentist, "Ms. Henderson." (*Id.*) Henderson told Plaintiff that the x-ray from February 2014 showed that Plaintiff's tooth was cracked, and that he needed to have it filled. Henderson filled the tooth, but Plaintiff complains that he continued to experience problems which persist to this day, including a "'spreading of infection' to his gums, bleeding of the gums around the infected tooth, extreme swelling, and pain around the infected tooth and gums." (*Id.* at 5.) Plaintiff filed a grievance to obtain further treatment, to no avail. Plaintiff also filed several healthcare request forms but he was not able to obtain adequate treatment.

Plaintiff is now incarcerated at Alger Correctional Facility (LMF). He contends that he continues to suffer the foregoing symptoms. He asserts that he has been "deterred" from seeking further help, and that he is in imminent danger of physical injury due to lack of adequate treatment. (*Id.* at 7.) He claims the condition of his gums and tooth poses a particularly severe risk to his health because he has diabetes. He also claims that Defendant Minnich is in possession of dental records which show that Plaintiff is in imminent danger of serious physical injury.

The foregoing allegations do not satisfy the exception in § 1915(g). Plaintiff complains about the denial of dental care by Defendant Minnich at IBC in 2014, but at the time of filing the complaint, he was incarcerated at LMF. He contends that he is still suffering from a condition that requires further treatment, but he does not allege that Defendant Minnich is preventing him from obtaining that treatment. Indeed, when Plaintiff transferred from IBC (where

- 5 -

Defendant is located) to another facility, he received treatment from a different dentist. Thus, if Plaintiff needs further treatment, he should request it from the staff at his present facility. In other words, Plaintiff's claims against Minnich concern a danger that Plaintiff faced in the past, while he was incarcerated at IBC. Allegations of past danger do not satisfy the imminent-danger requirement. *Vandiver*, 727 F.3d at 585; *see also Day v. Maynard*, 200 F.3d 665, 667 (10th Cir. 1999) (imminent danger exception not satisfied where the plaintiff targeted defendants located at another prison facility).

Plaintiff implies that a suit against Minnich is necessary to address his present risk of harm because Minnich is in possession of dental records which show the seriousness of Plaintiff's condition; however, Plaintiff alleges that he was examined and treated by a different dentist after he met with Defendant Minnich at IBC. Dentist Henderson (who is located at SRF) reviewed the results of the x-ray ordered by Minnich and then treated Plaintiff's tooth by filling it. Thus, it appears that the records created by Minnich are available to other healthcare staff. Those same records should be available to the healthcare providers at Plaintiff's present facility. Moreover, to the extent that Plaintiff is complaining about his present condition, Minnich does not have to be a Defendant in order for Plaintiff to obtain records from him. *See* Fed. R. Civ. P. 45 (providing a mechanism to obtain evidence from third parties via subpoena). Thus, a suit against Minnich is not relevant to, or necessary to address, any present risk of harm to Plaintiff.

In light of the foregoing, § 1915(g) prohibits Plaintiff from proceeding *in forma pauperis* in this action. Plaintiff has twenty-eight (28) days from the date of entry of this order to pay the entire civil action filing fee, which is $400.00. When Plaintiff pays his filing fee, the Court will screen his complaint as required by 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c). If Plaintiff

fails to pay the filing fee within the 28-day period, his case will be dismissed without prejudice, but he will continue to be responsible for payment of the $400.00 filing fee.

Dated: March 12, 2015        /s/ Janet T. Neff
                                      Janet T. Neff
                                      United States District Judge

**SEND REMITTANCES TO THE FOLLOWING ADDRESS**:
Clerk, U.S. District Court
399 Federal Building
110 Michigan Street, NW
Grand Rapids, MI 49503

**All checks or other forms of payment shall be payable to "Clerk, U.S. District Court."**